## McGREGOR et al. *v.* BALL.

4   289
115   247

Under the common law, the title of the owner of personal property cannot be lost without his free consent.

No authority from the real owner to sell personal property is implied, by the common law, from the naked possession of the property by a third person, without the consent of the owner, under circumstances which ought to have put a purchaser from the latter on enquiry as to the origin of his possession and his title.

A sale of derelict or wrecked property, made under a statute, will not be valid unless there has been a substantial compliance with its requisitions.

Where one who had been authorized by a justice of the peace, under the provisions of the stat. of Arkansas of the 21st of February, 1838, s. 9, relative to the reshipment and sale of wrecked property, to ship such property to any market where he might deem it most likely that a good sale could be made of it, sells the property, by private sale, after its shipment, to the clerk of the steamer on which it was shipped, the sale will be without effect. *Per Curiam:* No application was made for permission to sell on the spot. Had such a sale been authorized, the sale would have been required to be public, after due notice, and at auction, to the highest bidder.

Where wrecked property is in safety, the salvor cannot sell it. A case of necessity may exist in which the power of the salvor to sell may be recognized; but, short of such a case, the salvor has no more authority to sell than a captor has.

A depositary who sells the deposit commits a theft.

If there be any thing unusual or irregular in a sale of property made by a party in possession but without authority to sell, the title of the real owner will not be affected by it, any more than it would be if the purchaser were not in good faith.

McGREGOR
*v.*
BALL.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J: C. A. *Jones* and *Maybin*, for the appellants. *Lacy*, for the defendant. The judgment of the court *(King*, J. absent,) was pronounced by

EUSTIS, C. J. This is an action brought by the plaintiffs, who were consignees of a quantity of lard, which was shipped to them in New Orleans from Terrehaute, in Indiana, on board the flat-boat Thomas White, for the recovery of a portion of it, which was found in the possession of the defendant in this city, and seized under a writ of sequestration. The parties in interest are the insurers on the cargo. It is alleged for the defence that, *Ball* purchased the lard in the State of Arkansas in good faith, and paid for it; and, on that ground, the district judge decided in favor of the defendant, and the plaintiffs have appealed.

It appears that the flat-boat was wrecked on her voyage on the Arkansas side of the Mississippi and was abandoned by the officers and crew, and that the cargo was taken possession of and sold to the defendant under color of certain statutes of the State of Arkansas. The validity of these proceedings were not enquired into by the District Court, whose decision was based on the *bona fides* of the purchase of *Ball* exclusively.

It is impossible for us to reconcile this purchase by the defendant, who was the clerk and part owner of the steamer Marengo, on which the lard was at the time shipped, with our ideas of what constitutes a fair mercantile transaction. The condition of the article, the external appearance of the casks, the place where the shipment on board the Marengo was made, were circumstances which ought to have induced more caution, and have put any person familiar with the river business on enquiry as its origin and the title of the party who undertook to dispose of it.

The defendant charges in his answer that he purchased the property in dispute from *Geo. W. Underhill*, as agent of one *Peterson*, and that he paid for it by two drafts, one for $700 on New Orleans, and another for $1,800 on Memphis, both of which he alleges have been paid. The former, it appears, only was paid; the second, for $1,800, was accepted under conditions, but there is no evidence of its having been paid. The lard was shipped on board the steamer from the plantation of *Bayless*, to which it had been hauled from the wrecked flat-boat, as the property of *James Peterson*, by order of the justice of the peace, and the sale was made, after the shipment, to the defendant, the clerk of the boat.

But it is not necessary to determine this case solely on the question of the *bona fides* of this purchase. It is sufficient, that *Ball* acquired no greater right than *Peterson*, his vendor, had. As the common law prevails in Arkansas, we take the authority of Kent as conclusive on this point. 2 Kent's Comm. 324. 1 Johnson's R. 478.

The title of the true owner cannot be lost without his own free act and consent. No authority could be implied from the naked possession of *Peterson*, under the circumstances, which was not with the consent of the owner, but the result of *force majeure*—the wreck of the boat, and by virtue of the statute of Arkansas, under which his doings in the premises are justified, and which it remains to consider.

But it is necessary to state the position of *Peterson*, who is an intervenor in this suit. He alleges that he became the owner of the property wrecked in consequence of having secured and saved it, and that he, through his agent *Underhill*, sold the property in dispute to *Ball*, for a valuable consideration, and that

*Ball* is the *bonâ fide* owner of it. He bases his rights on his compliance with the statutes of Arkansas relating to wrecked property, under which he claims title, and prays for an allowance of $3,500, for expenses, labor and risk in saving the property, in the event of its being adjudged to belong to the plaintiffs. The proceedings under which he acted are set forth in an instrument purporting to be a copy of a record of a justice's court of the State of Arkansas, to the admission of which in evidence the plaintiffs' counsel have taken a bill of exceptions.

The proceedings import that *Peterson*, as the salvor of the property, which he had succeeded in saving from the wreck of the flat-boat, applied for an order of the justice to ship it to any market which he might deem expedient for the purpose of effecting a good sale, on the ground of its being in a condition to become valueless if longer kept. The justice being satisfied that the requisitions of the statute had been complied with by *Peterson*, ordered that he be authorized to *ship* the lard to any market in which he might deem it most likely to effect a good sale. The lard was shipped, as we have stated, on board the steamer Marengo, and sold to *Ball*, the clerk of the boat, as we have before seen.

The authority under which *Peterson* justifies his acts, and undertakes to vest the property in *Ball* by a sale, gives him no power whatever to sell; on the contrary, it negatives any such power, as the statute under which the proceedings were had conclusively shows. He did not apply for permission to sell on the spot, but to ship to a market, where a sale could be more advantageously effected. Had he applied for authority to sell under the statute, it provisions would have been required to be complied with. The sale would have been public, after due notice by advertizement, and at auction to the highest bidder. This was not applied for. An authority to ship was asked for, and that alone was granted.

The statute of the State of Arkansas, concerning property lost or wrecked, contemplates the shipment of such articles as that in dispute in this case, to some market, for the purpose of preventing a sacrifice by a sale in an unfreqented and perhaps almost inaccessible spot, where the property is thrown, and where the temptation is so strong, because the opportunities are so great, for collusion among those present, to the detriment and injury of the absent owner; but where a sale is required to be made on account of the condition of the property, it gives the absent owner the protection of a fair public sale at auction, after such advertizement as the magistrate may direct.

The two sections of the statute which regulate the sale and shipment of property wrecked, are as follows: "Sec. 9. When a raft or boat with produce therein shall be taken up, which raft, or cargo of the boat, consists of such articles as are usually taken to the State of Mississippi or Louisiana, for sale, and the owner does not apply for, or make demand of, such property within twenty days, the person taking up such property may apply to some justice of the peace of the county, where such property was taken up; and, on showing that the property so taken up is of a perishable nature, and is likely to be injured, or become of less value, by being kept, such justice may make an order authorizing the taker of such property to sell such property at public auction, on giving notice by advertizement, as the justice may direct; or authorizing the taker up to ship such property to any market, where he may deem it most likely he will effect a good sale of such property."

Sec. 10. "Before such sale shall be made, or the property removed for shipment to another market, the taker up thereof shall enter into bond to the State of Arkansas, with sufficient security, to be approved of by the justice, in double the

McGregor
v.
BALL.

value of the property so taken up, conditioned that if the owner shall appear, and establish his claim to said property, within one year from the time of taking up such property, the taker up will pay to such owner the value of such property, deducting his salvage, or, when taken to a market, then deducting his salvage and reasonable expenses." Revised statutes of Arkansas, p. 719, ch. 84.

In the presence of the provisions of this act, we can recognize no power in *Peterson* to sell, under the authorization of the justice to ship the property to a market for the purpose of securing a fair price for the benefit of the owner. For the private sale by his agent, *Underhill*, the precept in evidence was no warrant; and, without adverting to any of the circumstances which mark this case as extraordinary, we cannot hold a sale of derelict or wrecked property *to* be valid under a statute, without a substantial compliance with its requisitions. The owner cannot be deprived of his property without his agency or consent, except by virtue of law. Nor can we consider *Ball* as without that notice, which the facts of this case, as disclosed in evidence, strongly imply. There was enough in the circumstances to put him on enquiry. He ought to have looked into the matter when he made the purchase, and cannot now urge his want of due diligence and circumspection. *Schooner Tilton*, 5 Mason, 494.

The statute of Arkansas, which was made for the protection of property wrecked, we think places the salvor in the relation of a quasi depositary. It gives him the possession adversely to third persons, but negatives the power to sell at private sale, by requiring the sale of wrecked property to be sold at public auction. When property wrecked is in good safety, we know of no authority on the part of salvors to sell it. A case of necessity, we are not prepared to say might not exist, in which the power of the salvor to sell might be recognized; but, short of such a case, the salvor has no more authority to sell than the captor has. The consequences of the contrary doctrine would be alarming to the interests of our internal trade. It would make the river coast, in times of tempest and disaster, the theatre of rapacity and plunder, and would defeat the conservative purpose of the statute itself. With a view to results like this, it has become a principle of the law of nations, that a naked sale of an enemy's property by a captor is void, and does not divest the owner's title, without a sentence of condemnation.

Without the statute, we can find no authority of *Peterson* to make the sale to *Ball*, still less in the manner and under the circumstances disclosed in the testimony. We have stated that it was not necessary to determine on the *bona fides* of *Ball*, in making the purchase. It is sufficient for the owner to establish that the title to the property was his. The sale under the statute cannot be maintained; the salvor had no right to make the sale. His possession as bailee gave him no right to sell, his powers being limited, on principles of law, to those of a keeper of an irregular deposit, custodian, or a guardian of things for hire. Story on Bailments, § 622. The depositary who sells the deposit, commits a theft of it. Et la chose devient infectée du vice de vol, qui ne se purge point, jusqu' à ce qu'elle soit rendu an propriétaire. Pothier, Traité de Depot, § 43. But if there be any thing unusual or irregular in the sale, the validity of the tittle of the real owner will not be affected by it, any more than it would be if the purchaser were not in good faith. Kent's Com. *loc. cit. Ball* may not have known *who the owner of this lard was;* but the time, the place, the condition of the casks, and the attendant circumstances, satisfy us that the sale was neither regular nor

usual, and that the purchase was a speculation out of the ordinary course of the river trade.

<div style="text-align:right"><em>McGregor</em><br><em>v.</em><br><em>Ball.</em></div>

On both grounds, we think the law is against him. We think an adherence to established principles on the part of courts is absolutely necessary in cases of this kind, in order to secure the safety of property in its way down to this mart, during the long and hazardous navigation from remote States, by discouraging the avidity and misconduct of those who are constituted by the laws the protectors of it, and the aid afforded them by adventurous and incautious speculators.

We do not feel ourselves authorized to allow *Peterson* the salvage which he claims in his petition of intervention. The bill of lading offered in evidence shows that there was on the boat other property of value, of which *Peterson* has given no account whatever, and which, on the evidence before us, must have been taken possession of by him. Under the circumstances an allowance of salvage on the property thus unlawfully converted by him to the injury of those interested, would be, under our views of the subject, in direct conflict with the reason and policy of the law. There were eighty-eight barrels of pork on board the boat, of which no account is given.

The judgment must be for the plaintiff, and against the intervenors.

It is therefore decreed that, the judgment of the District Court be reversed, and that the plaintiff recover from the defendant the property sequestered, to wit: one hundred and twenty-five barrels of lard, one hundred and eight tierces of lard or grease, and one hundred and nine kegs of lard, with costs in both courts; and that the intervention of *Peterson* be dismissed, with costs.